**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WEIHARIK GARCIA, individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br>v.<br><br>SOUTH SHORE HYUNDAI, LLC<br><br><br>Defendant. | Case No.<br><br><br><br>**JURY TRIAL DEMANDED** |

<u>**PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

Plaintiff Weiharik Garcia ("Ms. Garcia"), by her undersigned counsel, for this class action complaint against Defendant South Shore Hyundai, LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I.    INTRODUCTION

1.    <u>Nature of Action</u>: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.    However, the TCPA doesn't only restrict robocalls.

3.      Indeed, the Fourth Circuit has recognized that "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA

affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.      This case involves a campaign by South Shore to market its cars, through the use of pre-recorded ATDS telemarketing text messages and to numbers on the National Do Not Call Registry in plain violation of the TCPA.

6.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

7.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure

## II.      PARTIES

8.  Plaintiff Garcia is an individual who resides in the Eastern District of Pennsylvania.

9.  Defendant South Shore Hyundai, LLC is a New York LLC which sent the illegal calls at issue to residents of Pennsylvania, including those associated with 484 area codes.

## III.      JURISDICTION AND VENUE

10. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claim for violations of the Pennsylvania Telemarketer Registration Act relates to the same telemarketing campaign as the TCPA claim.

11. Personal Jurisdiction: The Court has specific personal jurisdiction over Defendant South Shore Hyundai, LLC because it directed its tortious conduct into this District, including by

sending its illegal prerecorded robocalls to 484-area code numbers and other numbers registered to individuals in this District.

12. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—were sent into this District.

## IV.    FACTS

### A.    The Enactment of the TCPA and its Regulations

13.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.      The Pennsylvania Telemarketer Registration Act**

18.     Realizing the particular harm to Pennsylvania residents that unsolicited telemarketing calls to them poses, the General Assembly passed Sections 2241 through 2249 of section 73 of the Pennsylvania Consolidated Statutes, which requires all "telemarketing businesses" and "telemarketers" to register as such with the Pennsylvania Attorney General at least 30 days prior to "offering for sale consumer goods or services through any medium." It is unlawful for a telemarketer to initiate a telephone call to a consumer without registering with the Office of Attorney General. 73 PA. CONS. STAT. § 2243.

19.     Cars are consumer goods covered by the statutory definition of "telemarketing" for which there is no exemption for being a "telemarketer." *Id*. § 2242.

20.     A violation of the Telemarketer Registration Act is also a violation of the Unfair Trade Practices and Consumer Protection Law (UTP/CPL). *Id*. § 2246(a). The UTP/CPL provides for a private right of action for violations thereof, for either attorneys fee's and costs, together with actual damages or statutory damages of $100, which can be up to trebled. 73 PA. CONS. STAT. § 201-9.2(a).

21.     Upon information and belief, the Defendant is not registered with the Pennsylvania Office of Attorney General.

**C.      Unsolicited Telemarketing to Plaintiff**

22.     Plaintiff Garcia is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23.     Plaintiff's residential cellular telephone number is (484)-XXX-XXXX, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

24.     Ms. Garcia uses the number for personal, residential, and household reasons.

5

25.   Plaintiff does not use the number for business reasons or business use.

26.   The number is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

27.   Plaintiff Garcia never consented to receive calls from Defendant.

28.   Plaintiff Garcia never did business with the Defendant.

29.   Despite this, Plaintiff received a total of at least 2 automated text messages from Defendant's number 516-973-3930 as part of a telemarketing campaign. The texts were sent on March 19, 2024 and solicited her to buy, sell, and/or trade a car.

30.   The messages, along with their associated content represented using hexadecimal code, are reproduced below.

> Hi May?, South Shore Hyundai here.
> Vehicle values are excellent right now.
> Can we take a look at it and get you a
> value on it? Trade or sell, we're open

```
0x48 0x69 0x20 0x4d 0x61 0x79 0x3f 0x2c 0x20 0x53 0x6f 0x75 0x74 0x68
0x20 0x53 0x68 0x6f 0x72 0x65 0x20 0x48 0x79 0x75 0x6e 0x64 0x61 0x69
0x20 0x68 0x65 0x72 0x65 0x2e 0x20 0x56 0x65 0x68 0x69 0x63 0x6c 0x65
0x20 0x76 0x61 0x6c 0x75 0x65 0x73 0x20 0x61 0x72 0x65 0x20 0x65 0x78
0x63 0x65 0x6c 0x6c 0x65 0x6e 0x74 0x20 0x72 0x69 0x67 0x68 0x74 0x20
0x6e 0x6f 0x77 0x2e 0x20 0x43 0x61 0x6e 0x20 0x77 0x65 0x20 0x74 0x61
0x6b 0x65 0x20 0x61 0x20 0x6c 0x6f 0x6f 0x6b 0x20 0x61 0x74 0x20 0x69
0x74 0x20 0x61 0x6e 0x64 0x20 0x67 0x65 0x74 0x20 0x79 0x6f 0x75 0x20
0x61 0x20 0x76 0x61 0x6c 0x75 0x65 0x20 0x6f 0x6e 0x20 0x69 0x74 0x3f
0x20 0x54 0x72 0x61 0x64 0x65 0x20 0x6f 0x72 0x20 0x73 0x65 0x6c 0x6c
0x2c 0x20 0x77 0x65 0x27 0x72 0x65 0x20 0x6f 0x70 0x65 0x6e 0x20
```

> to both.
>
> Reply STOP to cancel.

```
0x74 0x6f 0x20 0x62 0x6f 0x74 0x68 0x2e 0x0a 0x0a 0x52 0x65 0x70 0x6c
0x79 0x20 0x53 0x54 0x4f 0x50 0x20 0x74 0x6f 0x20 0x63 0x61 0x6e 0x63
0x65 0x6c 0x2e
```

31.     The hexadecimal codes associated with the text messages indicate that they were sent using an Automatic Telephone Dialing System (ATDS) which randomly generates telephone numbers by itself and also uses a prerecorded, artificial voice to generate message content.

32.     Specifically, the Court's attention is brought to the "n" at the end of the first message. Although an "n" (with no space) appears on the message, the hexadecimal code indicates that the actual message content was `0x6e`, which represents Unicode U+006E, or Latin Small Letter N, and then `0x20`, which represents Unicode U+0020 or "Space".

33.     In this case, an artificial or prerecorded voice was used to generate the message content, because it spontaneously generated `0x20`, which represents Unicode U+0020 or "Space," despite the fact that there is no space between "`open`" and "`to`" because they were completely separate messages.

34.     Similarly, the Court's attention is brought to the fact that there is a new line after the period in "`both.`" and before "`Reply.`" However, the automated system used to send the text messages has inserted "`0x0a 0x0a`" which indicates "line feed, line feed." However, there is only one new line in the message, not two, and the automated system has spontaneously generated numeric machine code for a new line where there was not one before.

35.     In the same vein, because the messages included an artificially generated "spaces" and "line feeds," the messages were sent using pre-recorded artificial voices capable of spontaneous language and formatting generation which are otherwise not present in manually typed or dialed messages.

36.     These specific instances of text generation also support the fact that the dialer has and uses a random or sequential number generator, which it can also use to generate telephone

numbers randomly or sequentially by itself, and thus make it an ATDS, which was used to send the text messages.

37.     Further demonstrating that the messages were sent using an ATDS that simply spontaneously randomly or sequentially generates telephone numbers and blasts out the message in a scattershot manner, together with possibly self-generating message content itself using artificial intelligence, is the fact that the Defendant had no earthly clue who it was sending automated messages to because the Plaintiff does not even drive, let alone is named "May."

38.     Further supporting the fact that a random or sequential telephone number generator was used to produce the telephone number to text, Defendant sent its text messages to 484- area code numbers despite the dealership being located in New York, which is quite the hike for anyone to go there from Philly.

39.     Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

40.     Plaintiff never provided her consent or requested these messages.

41.     The aforementioned messages to the Plaintiff were unwanted.

42.     The messages were non-consensual encounters.

43.     Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while taking care of domestic animals, working, and performing other critical tasks.

## V.   CLASS ACTION ALLEGATIONS

44.   <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings

this case on behalf of the Classes (the "Classes") defined as follows:

> **<u>Robocall Class</u>**: All persons in the United States who, (1) within four years prior
> to the commencement of this litigation until the class is certified (2) received one
> or more calls or text messages on their cellular telephone (3) from or on behalf of
> Defendant, (4) sent using the same, or substantially similar, pre-recorded
> message, including spontaneously generated text, used to contact the Plaintiff.

> **<u>National Do Not Call Registry Class</u>**: All persons in the United States whose (1)
> telephone numbers were on the National Do Not Call Registry for at least 31
> days, (2) but who received more than one telemarketing call or text message from
> or on behalf of South Shore, (3) within a 12-month period, (4) at any time in the
> period that begins four years before the date of filing this Complaint to trial.

> **<u>Pennsylvania Telemarketer Registration Act Class</u>**: All persons in the
> Commonwealth of Pennsylvania who (1) received a telephone call from or on
> behalf of South Shore, (2) at any time during which South Shore was acting as a
> "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office
> of Attorney General, (3) at any time in the period that begins two years before the
> date of filing this Complaint to trial.

45.    Excluded from the Classes are counsel, Defendant, any entities in which

Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this

action is assigned, and any member of such judge's staff and immediate family.

46.   The Classes, as defined above, are identifiable through telephone records and

telephone number databases.

47.   The potential members of the Classes likely number at least in the hundreds

because of the *en masse* nature of telemarketing calls.

48.   Individual joinder of these persons is impracticable.

49.   Additionally, the disposition of the claims in a class action will provide

substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

50.     Plaintiff is a member of the Classes and will fairly and adequately represent and protect the interests of the Classes as she has no interests that conflict with any of the class members.

51.     Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

52.     This class action complaint seeks injunctive relief and money damages.

53.     There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

        a.     whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

        b.     whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls;

        c.     whether Defendant's system has the capacity to store or produce telephone numbers using a random or sequential number generator, thus rendering it an ATDS;

        d.     whether Defendant's system's spontaneous generation of text qualifies as the sending of a message using an artificial or pre-recorded voice under the TCPA;

        e.     whether Defendant was a "telemarketer" conducting "telephone solicitations" to members of the Pennsylvania Telemarketer Registration Act class without the required registration; and

f.      whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

54.     Plaintiff's claims are typical of the claims of the Classes, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

55.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Classes, she will fairly and adequately protect the interests of the Classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

56.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

57.     A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

58.     Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On Behalf of Plaintiff and the Robocall Class)**

59.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

60.     The Defendants violated the TCPA by sending or causing to be sent calls, using an ATDS and/or by sending or causing to be sent, calls made using an artificial and/or prerecorded voice, to the protected telephones of Plaintiff and members of the Robocall Class without their prior express written consent.

61.      As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

62.     The Plaintiff and Robocall Class Members are entitled to an award of treble damages if their actions are found to have been knowing or willful.

63.     Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

64.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

65.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

66.     Defendant's violations were negligent, willful, or knowing.

67.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

68.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

### THIRD CAUSE OF ACTION
**Pennsylvania Telemarketer Registration Act**
**Violations of 73 PA. CONS. STAT § 2243**
**(On Behalf of Plaintiff and the Pennsylvania Telemarketer Registration Act Class)**

69.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

70.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act, § 2243, by making "telephone solicitation call" as a "telemarketer", to Plaintiff and members of the Pennsylvania Telemarketer Registration Act class despite not registering with the Office of Attorney General at least thirty days prior to the calls at issue.

71.     Defendant's violations were negligent, willful, or knowing.

72.     As a result of Defendant's, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the Pennsylvania Telemarketer Registration Act, § 2243, Plaintiff and members of the Pennsylvania Telemarketer Registration Act Class are presumptively entitled to their statutory damages of up to $300 for each violation under 73 PA. CONS. STAT. § 201-9.2(a), plus all reasonable attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.      An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry or robocalls to protected numbers, absent an emergency circumstance;

E.      An award to Plaintiff and the Classes of damages, as allowed by law; and

F.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI.      DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this March 27, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* forthcoming)
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

15