## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WEIHARIK GARCIA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>SOUTH SHORE HYUNDAI, LLC<br><br>    Defendant. | Civil Action No. 2:24-cv-01305 |

### DEFENDANT JS HYUNDAI OF VALLEY STREAM, LLC D/B/A SOUTH SHORE HYUNDAI, IMPROPERLY PLED AS SOUTH SHORE HYUNDAI, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Eric A. Fitzgerald, Esq.
Joseph G. Grady, Esq.
**McANGUS GOUDELOCK & COURIE, LLC**
2000 Market Street, Suite 2850
Philadelphia, PA 19103
Mailing Address: P.O. Box 12519
Columbia, SC 29211
Phone: (484) 406-4200
Email: eric.fitzgerald@mgclaw.com

*Attorneys for Defendant,*
*JS Hyundai of Valley Stream, LLC d/b/a South*
*Shore Hyundai, improperly pled as South Shore*
*Hyundai, LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ……………………………………………………ii

INTRODUCTION ……………………………………………………………1

FACTUAL AND RELEVANT PROCEDURAL BACKGROUND ……………………...2

LEGAL STANDARD ………………………………………………………...5

ARGUMENT …………………………………………………………………5

I.      PLAINTIFF'S THIRD CAUSE OF ACTION FAILS TO ARTICULATE ACTIONABLE CLAIMS UNDER THE PTRA OR THE UTPCPL. ………………………………………………………………...5

      A.    *SSH Is Not A Telemarketer Within The Meaning Of The PTRA* …………………………………………………………6

      B.    *SSH Was Not Required To Register With The Office Of Attorney General To Send The Texts At Issue In This Action.* …………………………………………………………8

      C.    *Garcia Has Not Alleged Purchase Or Sale Of Goods Or A Loss Of Money Or Property Necessary To Maintain A Claim For Violation Of The UTPCPL.* …………………………………………………………9

II.     PLAINTIFF'S SECOND CAUSE OF ACTION FAILS BECAUSE HER PHONE NUMBER WAS NOT REGISTERED WITH THE DNCR AT THE TIME THE TEXTS AT ISSUE WERE SENT. …………………………………………………………...11

III.    PLAINTIFF'S FIRST CAUSE OF ACTION FAILS TO PLAUSIBLY ALLEGE THAT SSH UNLAWFULLY USED AN ATDS. …………………………………………………………13

      A.    *Garcia Fails To Plausibly Allege That An ATDS Was Used.* …………………………………………………………14

      B.    *Garcia Fails To Plausibly Allege That The Texts At Issue Were Sent Using A Randomized Or Sequential Feature And Not From A Predetermined List Of Recipients.* …………………………………………………………17

CONCLUSION …………………………………………………………………19

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ……………………………………………………………5,13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) …………………………………………………………...13

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780, 787 (3d Cir. 2016)………………………………………………....13

*Fowler v. UPMC Shadyside*,
578 F.3d 203, 210 (3d Cir. 2009) ………………………………………………………5

*Fridline v. Integrity Vehicle Grp., Inc.*,
2023 U.S. Dist. LEXIS 195499, at *5 (M.D. Pa. Oct. 31, 2023) ……………………………12,13

*Garcia v. 2011 Legislative Reapportionment Comm'n*,
938 F. Supp. 2d 542, 548 (E.D. Pa. 2013) ………………………………………………5

*Grasso v. Katz*,
2023 U.S. App. LEXIS 18285, *8, 2023 WL 4615299 (3d Cir. July 19, 2023) ………………5

*Gross v. GG Homes, Inc.*,
2021 U.S. Dist. LEXIS 198339, at *7 (S.D. Cal. Oct. 14, 2021)………………………………18

*Johnson v. Carter*,
2018 U.S. Dist. LEXIS 82700, at *3 (W.D. Pa. May 16, 2018)………………………………12

*Jones v. Kirchenbauer*,
2020 U.S. Dist. LEXIS 242405, at *2 (D. Del. Dec. 28, 2020)………………………………12

*Kline v. Advanced Ins. Underwriters, LLP*,
2020 U.S. Dist. LEXIS 110453, at *7 (M.D. Pa. June 23, 2020)……………………………11,13

*Marks v. Unique Lifestyle Vacations, LLC*,
2024 U.S. Dist. LEXIS 41804, at *7-8 (E.D. Pa. Mar. 11, 2024) ………………………………11

*Pearsall v JP Morgan Chase Bank*,
2022 US Dist. LEXIS 93583, at *8 (E.D. Pa. May 24, 2022)…………………………….…..14

*Panzarella v. Navient Solutions, Inc.*,
37 F.4th 867 (3d Cir. 2022)………………………………………………………………18

*Perrong v CMI Mktg. Rsch. Inc.*,
2023 US Dist. LEXIS 171839, at *7-8 (ED Pa Sep. 26, 2023) …………………………………10

*Perrong v. Montgomery Cnty. Democratic Comm.*,
2024 US App. LEXIS 9238, *3-4 (3d Cir. Apr. 17, 2024) …………………………………………..18

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224, 232 (3d Cir. 2008) …………………………………………………………………..5

*Shelton v. FCS Capital LLC*,
2019 U.S. Dist. LEXIS 213179, at *8 (E.D. Pa. Dec. 11, 2019) ………………………………10

*Smart v Main Line Health*,
2024 US Dist. LEXIS 103753, at *6 (E.D. Pa. June 10, 2024)…………………………………17

## FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 12(b)(6) ……………………………………………………………………….0

47 U.S.C. § 227, et seq. …………………………………………………………1,4,11,12,13,14,17

47 C.F.R. § 64.1200(c)……………………………………………………………………11,13

## PENNSYLVANIA RULES AND STATUTES

73 P.S. § 201-9.2(a) ……………………………………………………………………………10

73 P.S. § 2242 ……………………………………………………………………………………6,7

73 P.S. § 2243 ……………………………………………………………………………………5,8

73 P.S. § 2246(a) ………………………………………………………………………………6,9

## INTRODUCTION

Defendant JS Hyundai of Valley Stream, LLC d/b/a South Shore Hyundai, improperly pled as South Shore Hyundai, LLC ("SSH"), submits the following Memorandum of Law in support of its motion to dismiss Plaintiff Weiharik Garcia's Class Action Complaint with prejudice. This is a purported consumer protection action in which Garcia contends that SSH is liable for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). In her Complaint, Garcia asserts that SSH violated the TCPA by (1) sending her texts utilizing an automated telephone dialing system ("ATDS") without her consent or permission and (2) sending her texts despite the fact that her telephone number was registered on the National Do-Not-Call Registry ("DNCR"). Garcia also alleges that SSH is liable under the Pennsylvania Telemarketer Registration Act ("PTRA") and Unfair Trade Practices/Consumer Protection Law ("UTPCPL") for sending the texts without previously registering as a telemarketer. Garcia asserts that SSH's marketing campaign was directed at thousands of people across the country, and she seeks to represent several purported classes of individuals who allegedly received similar texts.

As discussed in greater detail below, Garcia has failed to state actionable claims against SSH and her Complaint must be dismissed. As an initial matter, Garcia fails to articulate actionable violations of the PTRA because SSH is not a "telemarketer" within the meaning of the statute and was not required to register in order to send text messages like the ones alleged in the Complaint. Garcia's companion UTPCPL claim (which is the vehicle through which she seeks recovery for the alleged PTRA violations) is subject to dismissal for the separate reason that Garcia has not alleged a purchase or lease of a good, which is a prerequisite to maintaining an action under the statute. Garcia's TCPA claim relative to the DNCR is fatally flawed because it

is clear from DNCR records (of which the Court may take judicial notice) that Garcia's telephone number was not registered with the DNCR at the time she received the texts at issue on March 19, 2024. With respect to the TCPA claim alleging use of an ATDS, Garcia fails to plausibly allege that SSH utilized an ATDS and that any such dialing equipment actually used a sequential or randomized number generating function as opposed to selecting numbers from a predetermined list of intended recipients.

Because it is clear that Garcia has not, and cannot, articulate actionable claims against SSH, the Court should dismiss her Class Action Complaint against SSH with prejudice.

## **FACTUAL AND RELEVANT PROCEDURAL BACKGROUND[1]**

The Plaintiff, Weiharik Garcia, is an individual who resides within the Eastern District of Pennsylvania. (Complaint (Docket Paper No. 1) ¶ 8) Garcia has a cell phone that she uses for "personal, residential, and household" reasons. (Complaint ¶ 24) According to Garcia, her number was assigned to a residential telephone exchange service for consumers. (Complaint ¶ 26) Her number was not assigned to a commercial telephone exchange and she did not use the cell phone for business reasons or business use. (Complaint ¶¶ 25, 26) Garcia also claims that she did not consent to receive calls from SSH and that she never did business with SSH. (Complaint ¶ 28)

According to the Complaint, Garcia received two automated text messages from SSH on March 19, 2024. (Complaint ¶ 29) Garcia alleges that the messages stated as follows:

> **Text 1:**
>
> Hi May? South Shore Hyundai here.

---

[1] The "facts" set forth in this section are drawn from the allegations in the Plaintiff's Class Action Complaint. SSH does not, by discussing the Plaintiff's allegations herein, admit or agree that any of them is true. SSH reserves the right to contest each of the Plaintiff's allegations in any future proceedings including, but not limited to, a trial of this action.

Vehicle values are excellent right now.

Can we take a look at it and get you a value

on it? Trade or sell, we're open

**Text 2:**

to both.

Reply STOP to cancel.

(Complaint ¶ 30) According to Garcia, hexadecimal codes associated with these text messages indicate that they were sent using an ATDS. (Complaint ¶ 31)[2]

Garcia's cellular telephone number is (484) 838-9266. (Complaint ¶ 23; see also the Declaration of Sandra Dellolio, attached hereto as Exhibit 1, at ¶ 2) According to the Complaint, this telephone number has been registered on the DNCR for more than a year. (Complaint ¶ 23) The Federal Trade Commission maintains a website at https://www.donotcall.gov/verify.html that enables users to verify whether and when a particular telephone number was added to the Do Not Call Registry. (Exhibit 1 at ¶ 3) The website is available to the public and invites users to submit search requests to verify DNCR registration by entering up to three telephone numbers to be searched, along with an email address to which results of the search will be sent. (Exhibit 1 at ¶ 4) Upon initiation of a search, the FTC website sends an email to the user with the results of the search, which includes confirmation when a particular phone number was registered with the DNCR and the date upon which the number was registered. (Exhibit 1 at ¶ 5)

When Garcia's cell phone number, (484) 838-9266, is input into the FTC's DNCR search website, the results indicate that her telephone number was not registered with the DNCR until

---

[2] The specific allegations relative to hexadecimal codes are discussed in greater detail in the Argument section below.

April 12, 2024. (Exhibit 1 at ¶¶ 6-8) That date was almost a full month after Garcia had received the allegedly offending texts from SSH on March 19, 2024. (Complaint ¶ 29; Exhibit 1 at ¶ 8) It was also several weeks after Garcia's counsel commenced this action against SSH claiming, among other things, a violation of the DNCR. (*See generally* Complaint and filing date stamp)

Garcia filed her Complaint against SSH on March 29, 2024, approximately one week after she received the allegedly offending texts. (*See generally* Complaint and filing date stamp) In her Complaint, Garcia seeks recovery on three theories: (1) that SSH violated the TCPA 47 U.S.C. § 227(b)(1)(A) (iii) by causing calls to be made to her telephone using an ATDS and/or pre-recorded voice (Count I); (2) that SSH violated the TCPA 47 U.S.C. § 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(e), by causing telemarketing calls to be made to her cell phone when it was on the National Do Not Call Registry (Count II); and (3) that SSH violated the PTRA by making "telephone solicitation calls" to her without registering with the Office of the Attorney General at least 30 days prior. (Count III). (Complaint ¶¶ 65, 60, 70) Garcia seeks to represent on a nationwide basis three purported classes of claimants corresponding with the three causes of action set forth in her Complaint. (Complaint ¶ 44) These include a purported "Robocall Class" corresponding to Count I, a purported "National Do Not Call Registry Class" corresponding to Count II, and a purported "Pennsylvania Telemarketer Registration Act Class" corresponding to Count III. (Complaint ¶ 44)

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 8(a)(2), 'a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.' When evaluating a Rule 12(b)(6) motion 'courts [must] accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Garcia v. 2011 Legislative Reapportionment Comm'n*, 938 F. Supp. 2d 542, 548 (E.D. Pa. 2013) (*quoting Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008))). To survive a motion to dismiss the "complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Grasso v. Katz*, 2023 U.S. App. LEXIS 18285, *8, 2023 WL 4615299 (3d Cir. July 19, 2023) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citations omitted)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949 (citations omitted).

The court "must accept all of the complaint's well-pleaded facts as true, and may disregard any legal conclusions." *Garcia*, 938 F. Supp. 2d at 548 (*quoting Fowler*, 578 F.3d at 210-11). "The court is not required to accept '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .'" *Id.* (citations omitted).

## ARGUMENT

### I.    PLAINTIFF'S THIRD CAUSE OF ACTION FAILS TO ARTICULATE ACTIONABLE CLAIMS UNDER THE PTRA OR THE UTPCPL.

Garcia's Third Cause of Action seeks statutory damages under the UTPCPL, 73 P.S. § 201-9.2(a), based on SSH's alleged violation of the PTRA, 73 P.S. § 2243 by failing to register

as a telemarketer before sending her the two texts at issue. The Third Cause of Action must fail

for several reasons. First, SSH does not fall within the PTRA's definition of "telemarketer"

because there is no allegation that the company made telephone calls for the purpose of

completing a sales presentation during the call. Second, the Complaint does not allege an

actionable violation of the PTRA's registration rules because the text messages at issue do not

offer to sell anything. Third, even if the Third Cause of Action could be read to allege a violation

of the PTRA, and therefore also a violation of the UTPCPL by virtue of 73 P.S. § 2246(a),

Plaintiff fails to allege, as she must, that she purchased or leased goods or services and that she

suffered an ascertainable loss of money or property as a result of any such PTRA violation.

### A.     *SSH Is Not A Telemarketer Within The Meaning Of The PTRA.*

The PTRA defines "telemarketer" and "telemarketing" and requires a "telemarketer" to

register with the Office of Attorney General 30 days prior to offering for sale consumer goods

through any medium. "Telemarketer" is defined by a general statement, followed by a list of

exceptions. The general definition reads:

> "Telemarketer." Any person or business which, in connection with telemarketing, initiates or receives telephone calls to or from a consumer in this Commonwealth, or when the person or business acting in connection with telemarketing is located within this Commonwealth when such calls are initiated or received.

73 Pa. Stat. Ann. § 2242.

> The PTRA defines "telemarketing" as follows:

> A plan, program or campaign which is conducted to induce the purchase of goods or services or to solicit contributions for any charitable purpose, charitable promotion or for or on behalf of any charitable organization, by use of one or more telephones and which involves more than one telephone call.

*Id.* A telemarketer thus generally includes a person or business that initiates telephone calls to a

consumer in Pennsylvania in connection with a plan or program conducted to induce the

6

purchase of goods by use of one or more telephones, and which involves more than one telephone call.

The general definition of "telemarketer" to which the PTRA's registration requirements apply is subject to twelve exceptions, one of which directly applies to SSH based on the nature of the communication alleged in the Complaint:

> For purposes of registration under section 3(a), "telemarketer" does not include any of the following:
> …
> **(2)** A person or business soliciting without the intent to complete and who does not complete the sales presentation during the telephone solicitation, but completes the sales presentation at a later face-to-face meeting between the solicitor and the prospective purchaser, or who offers to send the purchaser descriptive literature and does not require payment prior to the purchaser's review of the descriptive literature. However, if a seller, directly following a telephone solicitation, causes an individual whose primary purpose it is to go to the prospective purchaser to collect the payment, this exemption does not apply.

73 Pa. Stat. Ann. § 2242.

In this case, and assuming that text messages alone can support a violation of PTRA,[3] the messages sent by SSH did not present a complete a sales presentation to Garcia and they expressly contemplated further in-person interactions with her before a transaction could be completed. The two text messages quoted in the Complaint read as follows:

> Hi May?, South Shore Hyundai here.
> Vehicle values are excellent right now.
> Can we take a look at it and get you a
> value on it? Trade or sell, we're open
>
> to both.
> Reply STOP to cancel

The text messages do not seek to sell any goods or services to Garcia. Rather, they solicit Garcia to permit SSH to inspect her vehicle so that SSH can provide her with a valuation for it. They

---

[3] The PTRA defines telemarketer and telemarketing solely with reference to "telephone calls" and does not mention text messages.

further advise that SSH would be open to acquiring the vehicle from Garcia, either by outright purchase or in trade for another vehicle. It cannot be said that these two messages, the second of which is merely a continuation of the first, make a complete sales presentation.

Indeed, the messages expressly request permission to "take a look at" Garcia's vehicle, which necessarily implies a later face-to-face meeting with the vehicle present. The text messages quoted in the complaint place SSH squarely within the second statutory exception to the definition of "telemarketer." The Complaint makes no allegations that Garcia received any other text messages or telephone calls from SSH, and, therefore, it fails to allege an actionable violation of the PTRA.

> **B.     SSH Was Not Required To Register With The Office Of Attorney General To Send The Texts At Issue In This Action.**

Even assuming that SSH could appropriately be found to be a "telemarketer" within the meaning of the PTRA, Garcia has still not alleged a violation of the statute because the text messages at issue do not trigger the statute's registration requirement. The PTRA contains a general rule requiring telemarketers to register with the Office of the Attorney General before offering consumer goods or services for sale:

> **(a) GENERAL RULE.—** In addition to any other requirements imposed by law, a telemarketer or the telemarketing business which employs the telemarketer is required to register with the Office of Attorney General at least 30 days prior to offering for sale consumer goods or services through any medium. This section will not apply, however, to persons or businesses licensed by or registered with a Federal or Commonwealth agency.

73 Pa. Stat. Ann. § 2243. Notably, the general rule does not require a telemarketer to register before making communications of any kind. It is only an offer to sell goods or services by a telemarketer that triggers the registration requirement.

As discussed in the preceding section, the text messages quoted in the Complaint do not offer anything for sale. Rather, they offer to inspect Garcia's car and provide her with an estimate of its value. The Complaint does not allege that SSH sent Garcia a text message containing an offer to sell a vehicle or any other consumer good or service. Nor does it allege any other telephone calls, text messages, or communication through other media made by SSH that offered to sell goods or services to her. Therefore, even assuming that SSH could be considered a telemarketer within the meaning of the PTRA, the Complaint fails to allege facts showing that SSH was required to comply with the statute's registration requirements. For this additional reason, SSH cannot be liable for violating the PTRA by failing to register with the Office of the Attorney General, as Garcia alleges in her Complaint, and her claim for violation of the PTRA must be dismissed.

### C. Garcia Has Not Alleged Purchase Or Sale Of Goods Or A Loss Of Money Or Property Necessary To Maintain A Claim For Violation Of The UTPCPL.

Garcia's only claim for relief under the Third Cause of Action is for minimum statutory damages under the UTPCPL. Plaintiff notes that a violation of the PTRA is automatically also a violation of the UTPCPL. 73 P.S. § 2246(a). A violation of the UTPCPL, however, does not automatically entitle a Plaintiff to bring a private action. Only a person who purchases or leases goods or services for household purposes and suffers an ascertainable loss of money or property as a result of a violation of the UTPCPL is entitled to bring a private action:

> **(a)** Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 Pa. Stat. Ann. § 201-9.2.

This Court has previously dismissed claims seeking damages under the UTPCPL for a predicate violation of the PTRA based on failure to plead a purchase or lease of household goods or services and consequent suffering of an ascertainable loss of money or property:

> Mr. Perrong acknowledges that there is no private right of action under the PTRA, but argues that the amended complaint states a claim using the UTPCPL's private right of action. 73 Pa. Cons. Stat. § 201-9.2(a) (providing "a private action to recover actual damages" for violations declared unlawful by section 3 of the act). Mr. Perrong does not cite any authority explaining how or why the PTRA could serve as a predicate claim under the UTPCPL, but it does not matter. There appears to be no dispute that the UTPCPL's private action applies only to a "person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal" as a result of covered unlawful practices. *Id.* The amended complaint does not plead any facts bearing on that requirement of the UTPCPL, and therefore that claim must be dismissed.

*Perrong v CMI Mktg. Rsch. Inc.*, 2023 US Dist. LEXIS 171839, at *7-8 (ED Pa Sep. 26, 2023); *see also Shelton v. FCS Capital LLC*, 2019 U.S. Dist. LEXIS 213179, at *8 (E.D. Pa. Dec. 11, 2019) (dismissing similar claim for violation of PTRA and UTPCPL where claimant failed to allege that he purchased or leased goods or services from defendant or that he suffered any ascertainable loss of money or property).

Although Garcia's Complaint alleges that she received the two text messages at issue in violation of the PTRA, it does not allege that Garcia purchased or leased any goods from SSH or that she suffered any loss of money or property. (*See* Complaint ¶ 5) To the contrary, Garcia's Complaint strongly suggests that she had no interest in a purchase or lease transaction with SSH because she does not drive an automobile. (*See* Complaint ¶ 37) In any event, Garcia's failure to allege a purchase or lease transaction with SSH and a resulting loss of money or property caused by the two texts at issue in this matter is fatal to her claim under the UTPCPL. *Perrong*, 2023 US Dist. LEXIS 171839, at *7-8; *Shelton*, 2019 U.S. Dist. LEXIS 213179, at *8. For this separate

reason, Garcia's Third Cause of Action fails to articulate an actionable claim against SSH and must be dismissed.

## II.   PLAINTIFF'S SECOND CAUSE OF ACTION FAILS BECAUSE HER PHONE NUMBER WAS NOT REGISTERED WITH THE DNCR AT THE TIME THE TEXTS AT ISSUE WERE SENT.

Count II of Garcia's Class Action Complaint must also be dismissed because the indisputable evidence, of which this Court may take judicial notice, demonstrates that her phone number was not registered with the DNCR at the time she received the texts at issue in this matter. The provisions concerning the DNCR are codified at 47 U.S.C. § 227(c), et seq., and associated regulations, 47 C.F.R. § 64.1200(c). Section 227(c) enables the FTC to enact regulations creating the DNCR and prohibiting any person from making a telephone solicitation to a subscriber "included in the [DNCR] database." 47 U.S.C. §§ 227(c); 47 U.S.C. § 227(c)(3)(F). The regulations provide that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber *who has registered his or her telephone number on the national do-not-call registry* of persons who do not wish to receive telephone solicitations that is maintained by the [FTC]." 47 C.F.R. § 64.1200(c)(2) (emphasis supplied). Section 227(c)(5) authorizes a private right of action for violations of the regulations promulgated by the FTC.

It is clear that in order to invoke the protections of these statutes and regulations, a plaintiff must have registered with the DNCR *prior to* receiving the call or text at issue. *See generally Marks v. Unique Lifestyle Vacations, LLC*, 2024 U.S. Dist. LEXIS 41804, at *7-8 (E.D. Pa. Mar. 11, 2024) (discussing statute and regulations); *Kline v. Advanced Ins. Underwriters, LLP*, 2020 U.S. Dist. LEXIS 110453, at *7 (M.D. Pa. June 23, 2020) (observing that it is unlawful to initiate a call to a person "who has registered his or her telephone number

11

on the national do-not-call registry"); *Fridline v. Integrity Vehicle Grp., Inc.*, 2023 U.S. Dist. LEXIS 195499, at *5 (M.D. Pa. Oct. 31, 2023) (similar).

The registration status of Garcia's phone number is an essential element of her claim under the TCPA for an alleged violation of the DNCR. The actual registration status of Garcia's telephone number on the DNCR is a matter of public record of which the Court can appropriately take judicial notice. *See, e.g., Johnson v. Carter*, 2018 U.S. Dist. LEXIS 82700, at *3 (W.D. Pa. May 16, 2018) (taking judicial notice of copyright requirements and copyright holder information provided on website maintained by United States Copyright Office); *Jones v. Kirchenbauer*, 2020 U.S. Dist. LEXIS 242405, at *2 (D. Del. Dec. 28, 2020) (taking judicial notice of fact that plaintiff had been registered on sex offender registry maintained by state). SSH has appropriately documented the steps taken to search the DNCR website maintained by the FTC for DNCR registration status and registration dates for Garcia's telephone number. (Exhibit 1 at ¶¶ 3-8) The results, which can easily be replicated by Garcia and the Court, are the type of evidence that can be judicially noticed by the Court. *See id.*

The search results from the FTC's DNCR website clearly indicate that Garcia's telephone number (484) 838-9266 was not registered with the DNCR until April 12, 2024, which was several weeks after she received the texts at issue in this matter and also several weeks after she commenced this action. (Exhibit 1 at ¶ 8) That means that at the time Garcia received the texts from SSH on March 19, 2024, her telephone number was not registered with the DNCR. Because her telephone number was not registered with the DNCR at the relevant time, Garcia cannot maintain a claim against SSH for allegedly violating the prohibitions against calling/texting a telephone number registered with the DNCR. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. §

64.1200(c)(2); *Kline*, 2020 U.S. Dist. LEXIS 110453, at *7; *Fridline* 2023 U.S. Dist. LEXIS 195499, at *5.

Alternatively, and to the extent that the Court believes that it is unable to take judicial notice of Garcia's DNCR registration status, SSH respectfully requests that the Court convert this portion of SSH's motion to dismiss to a motion for summary adjudication and grant SSH summary judgment on this aspect of Garcia's claims. SSH has provided compelling evidence that Garcia's number was not registered with the DNCR at the time the allegedly unlawful texts were sent, and the proffered evidence is not reasonably subject to dispute by Garcia. Under these circumstances, it would serve no useful purpose to permit Garcia to proceed with her DNCR claim. Accordingly, the Court should dismiss Garcia's Second Cause of Action, or alternatively, summarily adjudicate it in favor of SSH.

### III.  PLAINTIFF'S FIRST CAUSE OF ACTION FAILS TO PLAUSIBLY ALLEGE THAT SSH UNLAWFULLY USED AN ATDS.

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Though this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at

675). In step two, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679). If the well-pleaded facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

### A. Garcia Fails To Plausibly Allege That An ATDS Was Used.

Applying step one of the *Twombly*/*Iqbal* approach to Plaintiff's First Cause of Action, the elements Plaintiff must plead to state a claim for violation of 47 U.S.C. § 227(b)(1)(A)(iii) are (1) the defendant called a cellular telephone number; (2) using an automated telephone dialing system ("ATDS") or an artificial or prerecorded voice; (3) without the recipient's prior express consent. *Pearsall v JP Morgan Chase Bank*, 2022 US Dist. LEXIS 93583, at *8 (E.D. Pa. May 24, 2022). At issue here is the second element, whether Garcia's factual allegations plausibly allege that SSH used an ATDS or an artificial or prerecorded voice to send text messages to her cellular phone.

Step two of the *Twombly*/*Iqbal* analysis requires separating those allegations that state conclusions from those that state facts. In her attempt to allege that SSH used an ATDS or prerecorded voice to send text messages to her, Plaintiff relies on the hexadecimal code associated with the content of the message to support an inference that an ATDS was used to send the messages:

> 31. The hexadecimal codes associated with the text messages indicate that they were sent using an Automatic Telephone Dialing System (ATDS) which randomly generates telephone numbers by itself and also uses a prerecorded, artificial voice to generate message content.

32. Specifically, the Court's attention is brought to the "n" at the end of the first message. Although an "n" (with no space) appears on the message, the hexadecimal code indicates that the actual message content was 0x6e, which represents Unicode U+006E, or Latin Small Letter N, and then 0x20, which represents Unicode U+0020 or "Space".

33. In this case, an artificial or prerecorded voice was used to generate the message content, because it spontaneously generated 0x20, which represents Unicode U+0020 or "Space," despite the fact that there is no space between "open" and " to" because they were completely separate messages.

34. Similarly, the Court's attention is brought to the fact that there is a new line after the period in "both." and before "Reply. " However, the automated system used to send the text messages has inserted "0x0a 0x0a" which indicates "line feed, line feed." However, there is only one new line in the message, not two, and the automated system has spontaneously generated numeric machine code for a new line where there was not one before.

35. In the same vein, because the messages included an artificially generated "spaces" and "line feeds," the messages were sent using pre-recorded artificial voices capable of spontaneous language and formatting generation which are otherwise not present in manually typed or dialed messages.

36. These specific instances of text generation also support the fact that the dialer has and uses a random or sequential number generator, which it can also use to generate telephone numbers randomly or sequentially by itself, and thus make it an ATDS, which was used to send the text messages.

These paragraphs contain a few factual allegations about the hexadecimal codes underlying the text in the messages she received. Garcia alleges that the hexadecimal code that translates to "space" was present at a place where no space was included in the translated text.[4] She further alleges that two hexadecimal codes that translate to "line feed" were present, but only one new line was included in the message.[5] But the majority of the content in Paragraphs 31

---

[4] Plaintiff alleges that a space is absent because the hexadecimal that codes to a space appears as the last line of a text message. SSH maintains that a space may exist at the end of a text line even if no subsequent character exist to make the presence of the space obvious and visible.

[5] SSH maintains that the text message properly translated the hexadecimal code and the text message quoted in the complaint has two blank lines where the hexadecimal code indicates they would be.

through 36, consists of conclusory assertions that are not supported by the facts alleged. Garcia asserts, for example, that the hexadecimal codes indicate the text messages were sent using an ATDS which randomly generates telephone numbers by itself and also uses a prerecorded, artificial voice to generate message content; that an artificial or prerecorded voice was used to generate the message content, because it spontaneously generated a hexadecimal code; that the messages were sent using pre-recorded artificial voices capable of spontaneous language and formatting generation which are otherwise not present in manually typed or dialed messages; and that instances of text generation support the fact that the dialer has and uses a random or sequential number generator, which it can also use to generate telephone numbers randomly or sequentially by itself. These unsupported conclusions may appropriately be disregarded under *Twombly/Iqbal* standard.

Under step three of the *Twombly*/*Iqbal* analysis, the Court assumes the well-pleaded allegations are true and draws all reasonable inferences from them to determine whether a plausible claim is alleged. In this case, the Court may assume that the alleged discrepancies between the hexadecimal codes and the translated text exist and may draw reasonable inferences therefrom to determine whether they plausibly support a conclusion that SSH used an ATDS to send the text messages. Evaluation of the allegations in this manner reveals that Garcia relies upon numerous unsupported leaps to reach the conclusion that SSH used an ATDS to send text messages. These include:

- that SSH used an automated system to generate the text messages and that the automated system spontaneously generated numeric machine code (paragraph 34);

- that a system which artificially generated spaces and line feeds is capable of spontaneous language generation (paragraph 35);

- that a system capable of spontaneous text generation has and uses a random or sequential number generator that can be used to generate random or sequential telephone numbers (paragraph 36); and

- that a random or sequential number generator was used to send the alleged text messages (paragraph 31).

In sum, an inference that a random or sequential number generator was used to send the messages cannot be reasonably drawn from a discrepancy between hexadecimal code and translated text. Garcia has not plausibly alleged that SSH used an ATDS based upon two hexadecimal codes in the message sent which were not translated in the text message.

Garcia's Complaint also includes several conclusory allegations that a prerecorded artificial voice was used to generate or send text message content. A prerecorded or artificial voice refers to an audible communication, which is not typically present in the text messages described in the Complaint. Nor does the Complaint expressly allege that any audio content was sent to Garcia. The Complaint does not explain how a prerecorded artificial voice was involved in text messages. The references in the complaint to a prerecorded or artificial voice are nothing more than threadbare recitals of an element of a claim under 47 U.S.C. § 227(b)(1)(A)(iii) that do not suffice to plausibly allege a claim thereunder. *Smart v Main Line Health*, 2024 US Dist. LEXIS 103753, at *6 (E.D. Pa. June 10, 2024) (citing *Iqbal*, 556 U.S. at 678). Because Garcia has not plausibly alleged that an ATDS or artificial prerecorded voice was used, her First Cause of Action must be dismissed.

     **B.**     ***Garcia Fails To Plausibly Allege That The Texts At Issue Were Sent Using A Randomized Or Sequential Feature And Not From A Predetermined List Of Recipients.***

Beyond the fact that the allegations do not support a conclusion that an ATDS and/or a prerecorded voice was used in sending the texts at issue, Garcia's Complaint is also subject to dismissal because she has not plausibly alleged that any randomized or sequential number generation feature was used as opposed to a predetermined list of intended recipients. The Third Circuit has held that the use of automated dialing equipment does not constitute a prohibited use of an ATDS unless the defendant actually used the equipment's randomized or sequential dialing function to generate the telephone numbers contacted. *See Perrong v. Montgomery Cnty. Democratic Comm.*, 2024 US App. LEXIS 9238, *3-4 (3d Cir. Apr. 17, 2024); *Panzarella v. Navient Solutions, Inc.*, 37 F.4[th] 867 (3d Cir. 2022) (explaining that automated dialing equipment using a hypothetical "list-mode" function, where numbers might be selected randomly or sequentially from a user's predetermined list, would not constitute unlawful "use" of an ATDS). Where the automated equipment merely selects numbers from a list, either randomly or sequentially, it is not considered to be the use of an ATDS within the meaning of the TCPA. *See Perrong*, 2024 US App. LEXIS 9238 at *3-4 (affirming dismissal of TCPA claims where defendant used "listmode" function even if numbers from list were drawn sequentially or randomly).

Here, Garcia has not plausibly alleged that the text messages she received were sent utilizing a randomized or sequential dialing function. As set forth in the Complaint, the texts at issue were directed to a specific individual, which suggests that they were sent using a list, and not using the randomized or sequential features of an automated dialing system. *See Perrong*, 2024 US App. LEXIS 9238 at *4 (noting that phone call addressing recipient by name indicated that call was targeted from a list and did not utilize prohibited randomized or sequential function of ATDS); *see also Gross v. GG Homes, Inc.*, 2021 U.S. Dist. LEXIS 198339, at *7 (S.D. Cal.

Oct. 14, 2021) (dismissing TCPA claims where text message was directed to specific recipient by name, which rendered implausible her conclusory allegations that defendant utilized a random or sequential number generator). In light of this, Garcia's additional allegations concerning her receipt of the texts at issue are insufficient to plausibly allege that the texts sent to her were the result of a randomized or sequential dialing function. Accordingly, her First Cause of Action fails to state a claim upon which relief may be granted and must be dismissed.

<u>**CONCLUSION**</u>

For the reasons discussed above, SSH respectfully requests that the Court dismiss Garcia's complaint with prejudice.

Respectfully submitted,

_____

Eric A. Fitzgerald, Esq.
Joseph G. Grady, Esq.
McAngus, Goudelock & Courie, LLC
2000 Market Street, Suite 2850
Philadelphia, PA 19103
Mailing Address: P.O. Box 12519
Columbia, SC 29211
Phone: (484) 406-4200
Email: eric.fitzgerald@mgclaw.com

*Attorneys for Defendant,*
*JS Hyundai of Valley Stream, LLC d/b/a South*
*Shore Hyundai, improperly pled as South Shore*
*Hyundai, LLC*

Dated: June 21, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| WEIHARIK GARCIA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>SOUTH SHORE HYUNDAI, LLC<br><br>     Defendant. | Civil Action No. 2:24-cv-01305 |

## CERTIFICATE OF SERVICE

  I, Eric. A. Fitzgerald, Esquire, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Support of Motion to Dismiss was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing on all counsel of record on this 21st day of June 2024.

             _____
             Eric A. Fitzgerald, Esq.
             Joseph G. Grady, Esq.

Date:  June 21, 2024